

FILED

MAY 11 2004

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILLSIDE DAIRY, INC., et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>A.G. KAWAMURA, Secretary,<br>California Department of Food &<br>Agriculture, et al.,<br><br>            Defendants. | CIV-S-97-1179 GEB JFM<br><br>ORDER |
| PONDEROSA DAIRY, et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>A.G. KAWAMURA, Secretary,<br>California Department of Food &<br>Agriculture, et al.,<br><br>            Defendants. | CIV-S-97-1185 GEB JFM ✓ |

Plaintiffs in both actions move for summary judgment on their facial challenge to California Food & Agricultural Code §§ 62077 and 62078, and certain 1997 amendments to the California Department of Food and Agriculture Pooling Plan for Market Milk ("Pooling Plan"), arguing these statutes and the amendments are unconstitutional under the Commerce Clause. Defendants oppose the motion, except for the portion that seeks to enjoin Defendants from enforcing §§ 62077 and 62078 on interstate raw milk sales.

<u>CHALLENGE TO 62077 AND 62078</u>

Defendants state the Department of Food and Agriculture has not applied §§ 62077 and 62078 to out-of-state raw milk producers, "does not intend to do so in the future, and . . . does not object to a permanent injunction prohibiting the Department from enforcing these provisions on out-of-state dairy farmers. . . ." (Defs.' Supp. Brief in Opp'n to Pls.' Joint Mot. for Summ. J., filed April 5, 2004, at 2.) In light of Defendants' position, it must be determined whether Plaintiffs need an injunction preventing Defendants from doing what they say they have not done and will not do; specifically, Defendants state they have not applied and will not apply §§ 62077 and 62078 to interstate raw milk sales. Before a permanent injunction issues, Plaintiffs have to demonstrate a likelihood of substantial and immediate irreparable injury. See <u>Easyriders Freedom F.I.G.H.T. v. Hannigan</u>, 92 F.3d 1486, 1495 (9th Cir. 1996) ("The requirements for the issuance of a permanent injunction are 'the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law.'").

Plaintiffs contend even though Defendants state they do not intend to enforce §§ 62077 and 62078 on interstate raw milk sales, Defendants lack authority under Article III, section 3.5(a) of the California Constitution to "refuse to enforce a statute . . . unless an appellate court has made a determination that such statute is unconstitutional. . . ." (Pls.' Supp. Memo. of P. & A. at 19.) Therefore, Plaintiffs contend an injunction is required because the Department of Food and Agriculture "may [eventually] attempt to enforce" these statutes on interstate raw milk purchases. (<u>Id</u>.) But speculation that Defendants may eventually alter their position on

2

enforcement of these statutes is insufficient to justify injunctive relief. Since Defendants have agreed not to enforce these statutes on interstate raw milk sales, it is inappropriate to "pass upon the constitutionality of [the statutes because the] suit . . . is not adversary, [and] there is no actual antagonistic assertion of rights." Congress of Indus. Orgs. v. McAdory, 325 U.S. 472, 475 (1945) (holding that no decision should be reached on the constitutionality of a statute, since the government agreed not to enforce it). Therefore, Plaintiffs' challenge to these statutes is dismissed. See generally Enrico's, Inc. v. Rice, 730 F.2d 1250, 1253-55 (9th Cir. 1984) (dismissing appeal after government ceased enforcing challenged regulations, since Article III jurisdiction ceased to exist).

### CHALLENGE TO 1997 POOLING PLAN AMENDMENT

Plaintiffs also seek to prevent Defendants' application of a 1997 amendment to the Pooling Plan, contending that it discriminates against some interstate raw milk purchases. The challenged 1997 amendment amends § 900 of Article 9 of the Pooling Plan to require certain California processors who buy raw milk from out-of-state producers to make a payment to an equalization pool ("the pool") from which disbursements are made to various California raw milk producers and processors. This payment is calculated as follows: First, the raw milk purchased is assigned a class price corresponding to the use made of that raw milk under § 900(a).[1] Then, the lower of the "value

---

[1] California law establishes five classes of dairy products which California processors create from raw milk. See Food & Argic. Code §§ 61932-61935. The Pooling Plan "establishes minimum prices to be paid by handlers to producers for market milk in the various classes." Id. § 62062. But "[t]he price that a [California processor] pays for raw milk based upon its [class] does not necessarily equal the price that a [California producer] receives for the raw milk" under the Pooling Plan. (Pls.' Undis.

based on the receiving plant's inplant usage" or a modified quota price is deducted from the class price assigned under § 900(a).[2] The remainder must be paid into the pool under § 1003.

> Defendants explain the effect of this amendment as follows:
>
> Under the Pooling Plan, as amended, California processors account to the pool for their purchases of out-of-state milk based on the utilization of that milk. The quota and overbase pool prices [which are paid to California raw milk producers] are generated from that pool of revenue, whereas prior to the Amendments, the quota and overbase prices were calculated after the out-of-state milk had, in effect, been subtracted out of the pool. The effect of this change is that quota and overbase prices have increased.

(Defs.' Supp. Undis. Facts ¶ 6.) Plaintiffs contend this payment, which is made because of interstate raw milk sales and only disbursed to certain California dairy businesses for their benefit, is an unconstitutional tariff.

The issue is whether the facial requirement in the Pooling Plan prescribing that this payment be made constitutes a monetary assessment on interstate raw milk sales for the economic protection of California dairy businesses, which discriminates against interstate raw milk sales. "[U]se [of] the term . . . 'discrimination' simply means differential treatment of in-state and out-of-state economic

---

Facts ¶ 13.) "Thus, for example, processors of fluid milk pay a premium price, part of which goes into an equalization pool that provides a partial subsidy for cheese manufacturers who pay a net price that is lower than the farmers receive." Hillside Diary, Inc. v. Lyons, ___ U.S. ___, 123 S. Ct. 2142, 2145 (2003) (citation omitted).

[2] The quota price, established by Defendants, is "compute[d] based on the weighted average classified prices of all raw milk purchases in the State." (Pls.' Undis. Facts ¶ 15.) The quota price is used to determine the price certain California raw milk producers receive when they sell raw milk to a California processor.

4

interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." <u>Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of the State of Oregon</u>, 511 U.S. 93, 99 (1994).

Under the Pooling Plan, when a California dairy products processor purchases raw milk from a California producer, the processor pays into the pool an "establishe[d] minimum price" set by Defendants. Cal. Food & Agric. Code § 62062. Plaintiff's competitor, a California raw milk producer, receives a guaranteed minimum raw milk price because of the Pooling Plan, irrespective of the dairy product to which the raw milk is converted, (Pls.' Undis. Facts ¶ 14), payment of its shipping costs, (Defs.' Opp'n to Pls.' Undis. Facts ¶ 7), and the right to vote on the manner in which the Pooling Plan operates. (Pls.' Undis. Facts ¶ 20.) When a California dairy products processor purchases raw milk from an out-of-state producer, § 900 requires the processor to pay the amount set by Defendants under § 900, regardless of the raw milk purchase price negotiated between the processor and producer. Although California processors, rather than out-of-state raw milk producers, make this payment, that is immaterial to the Commerce Clause analysis. <u>West Lynn Creamery, Inc. v. Healy</u>, 512 U.S. 186, 203 (1994) ("The idea that a discriminatory tax does not interfere with interstate commerce merely because the burden of the tax was borne by consumers in the taxing State [rather than out-of-state sellers has been] thoroughly repudiated. . . .") (citation and quotation marks omitted). The payments by California processors for interstate raw milk purchases are pooled, and each California raw milk producer is paid "a weighted average 'pool price'" for all raw milk sold to California processors. (Defs.' Memo. of P. & A. at 10.) The

5

face of the Pooling Plan reveals that out-of-state raw milk producers selling milk to California processors receive no benefit from the pool.

Plaintiffs contend the Pooling Plan is similar to the milk system considered in West Lynn, 512 U.S. at 190-91, which was declared unconstitutional under the Commerce Clause. That system "require[d] every [milk] 'dealer' in Massachusetts to make a monthly 'premium payment' into the 'Massachusetts Dairy Equalization Fund' . . . [based on] the amount . . . of the dealer's [fluid milk] sales in Massachusetts [regardless of the state where that milk was produced]. Each month the fund [was] distributed to Massachusetts [raw milk] producers." Id. The Supreme Court stated this payment was "effectively a tax which makes milk produced out of State more expensive." Id. at 194. The Court explained: "Massachusetts not only rebates to domestic milk producers the tax paid on the sale of Massachusetts milk, but also the tax paid on the sale of milk produced elsewhere." Id. at 197.

Defendants argue West Lynn is distinguishable, contending the Pooling Plan does not "require the out-of-state producer to accept [a] minimum price, [because] he can negotiate against [the minimum price applied to in-state raw milk sales], he can compete against his California counterparts but he isn't competing based on the minimum price for butter [sic], he's competing based on the higher minimum floor price that the department has given him. . . ." (April 19, 2004, hearing transcript at 9.) But this argument is unpersuasive because as stated in West Lynn: "out-of-staters' ability to remain competitive by lowering their prices would not immunize a

6

discriminatory measure" from being invalidated under the Commerce Clause. Id. at 195.

Since the 1997 amendment to § 900 requires out-of-state raw milk producers to pay for benefits received exclusively by California dairy businesses, it is similar to the milk pricing order invalidated in West Lynn. Like the charge in West Lynn, this charge attendant to interstate milk sales, which is evident on the face of the Pooling Plan and just benefits certain California dairy businesses, renders § 900 discriminatory "because it, like a tariff, neutralizes advantages belonging to the place of origin." West Lynn, 512 U.S. at 196 (citation and quotation marks omitted).

Defendants argue notwithstanding this discriminatory effect, § 900 should not be invalidated because it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." Oregon Waste, 511 U.S. at 101. The Commerce Clause requires that any justification advanced for a discriminatory restriction on commerce "pass the strictest scrutiny." Id. (citation and quotation marks omitted).

Defendants assert the need to prevent "roundtripping" is a justification for § 900. "Roundtripping" refers to truckloads of raw milk exiting California and then turning around and re-entering California so that the raw milk could be reported as out-of-state milk when it is sold to a California processor.[3] (Lombardo Decl. ¶ 6.)

At the hearing, Defendants' counsel was asked whether this practice could be halted by simply requiring California processors to

---

[3] It is assumed without deciding that preventing roundtripping is a legitimate local purpose.

7

swear under penalty of perjury whether the raw milk they purchased was produced in California. Defendants' counsel responded:

> Your Honor, that was what the department tried initially. And what happens is that a particular dairy, a particular co-op in California entered into an agreement with an out-of-state co-op whereby they sold their milk to the out-of-state co-op and the out-of-state co-op in turn sold approximately the same amount of milk into the state and gave the in-state dairy a kickback, which was the benefit of roundtripping. If the processor purchasing that milk had stated under penalty of perjury who it purchased that milk from, it would not be identified as round-tripping, it would be identified as a legitimate purpose, coming from out-of-state.

(April 19, 2004, hearing transcript at 54.) This argument is unpersuasive. Defendants have only addressed the effectiveness of requiring a California processor to identify the seller of the raw milk. Defendants have not shown that requiring California processors to state whether the raw milk they purchase was produced in California would be ineffective in preventing raw milk produced in California from being reported as produced elsewhere. Defendants have failed to carry their burden of showing the absence of reasonable, nondiscriminatory alternatives to § 900.

Since § 900 discriminates on its face against interstate raw milk sales and Defendants have not carried their burden of justifying this discrimination, § 900 violates the Commerce Clause. See Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me. 520 U.S. 564, 581 (1997) (holding a statute which discriminated against interstate commerce was "all but *per se* invalid" and violated the Commerce

8

Clause). Therefore, Defendants are permanently enjoined from enforcing § 900 on interstate raw milk sales.[4]

The Clerk's Office shall enter judgment in accordance with this Order. Lastly, Plaintiffs' request for leave to file their respective motions for attorneys' fees within forty days of the date on which this Order is filed is granted.

Dated: May 7, 2004

GARLAND E. BURRELL, JR.
United States District Judge

---

[4] Since this injunction remedies the harm to Plaintiffs at issue in this litigation, no injunctive relief regarding other sections of the Pooling Plan is warranted. See Armstrong v. Davis, 275 F.3d 849, 872 (9th Cir. 2001) ("In determining the scope of injunctive relief that interferes with the affairs of a state agency, we must ensure, out of federalism concerns, that the injunction heels close to the identified violation and is not overly intrusive. . . .") (citation and quotation marks omitted). Nor is Plaintiffs' request for a declaratory judgment granted. A federal court need not issue declaratory relief "[w]here a party [has obtained] . . . a substantially similar alternative remedy such as an injunction." Kinghorn v. Citibank, N.A., 1999 WL 30534, at *7 (N.D. Cal. Jan. 20, 1999); see also Allis-Chalmers Corp. v. Arnold, 619 F.2d 44, 46 (9th Cir. 1980) (finding judge may refuse declaratory relief "[w]here more effective relief can be obtained by other proceedings").

```
                United States District Court
                          for the
                Eastern District of California
                        May 11, 2004


               * * CERTIFICATE OF SERVICE * *

                                      2:97-cv-01185


Ponderosa Dairy

    v.

Veneman


_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  May 11, 2004, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Brian C Leighton                        SF/GEB
        Law Offices of Brian Leighton
        701 Pollasky                            CF/JFM
        Clovis, CA  93612

        John H Vetne
        PRO HAC VICE
        Law Offices of John H Vetne
        79 State Street
        Newburyport, MA  01950

        Michael Eldon Vergara
        Somach Simmons and Dunn
        Hall of Justice Building
        813 6th Street
        3rd Floor
        Sacramento, CA  95814-2403

        Bruce F Reeves
        Longyear O'Dea and Lavra
        3620 American River Drive
        Suite 230
        Sacramento, CA  95864-5923

        Linda L Berg
        Attorney General's Office of the State of California
```

```
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244

Bruce F Reeves
Attorney General's Office for the State of California
PO Box 944255
1300 I Street
Suite 125
Sacramento, CA  94244-2550
```

Jack L. Wagner, Clerk

BY: _____
    Deputy Clerk